[Civil No. 2910. Filed May 6, 1930.]

[287 Pac. 304.]

PACIFIC FINANCE CORPORATION, a Corporation, Appellant, v. LOUIS GHERNA, Appellee.

Messrs. Stockton & Perry and Mr. Thomas P. Riordan, for Appellant.

Mr. George O. Hilzinger, for Appellee.

LOCKWOOD, C. J.—Some time prior to the fifteenth day of December, 1927, the Gibbs Motor Company of Tucson, Arizona, came into the possession of a certain Chevrolet coupe carrying a foreign license. On the date named, it sold the coupe to Louis Gherna, hereinafter called defendant, upon a conditional sales contract in the usual form, part of the purchase price being paid down and the balance to be paid in installments of $38.31 per month. Shortly after the execution of this contract the motor company assigned its interest in the contract to Pacific Finance Corporation, a corporation, hereinafter called plaintiff, and thereafter went out of business. Defendant ran the car until about the 1st of March, 1928, when he was informed by a representative of the state highway department that he must not use it further without taking out an Arizona license, which he could not obtain without proof of title, requiring, since the car was of foreign origin, a tracing of title in the state of original registration. Defendant therefore appealed to the plaintiff, the

successor in interest of the defunct motor company, to secure him a certificate of title so that he could obtain a license, and plaintiff gave him the following letter:

"I wish to advise that Certificate of Title was referred to this company by the Gibbs Motor Company when your contract was purchased, and that we have in turn filed with the Arizona State Highway Department for an Arizona Title. Up to the present time, we have not received said title, and I would suggest that you show this letter to any officer who may stop you on account of said title. If it is not received within a reasonable time, kindly notify us at this office."

Defendant exhibited this letter to the highway department, but was unable to secure either a certificate of title or license thereon. He continued making his monthly payments, appealing at frequent intervals to plaintiff for a certificate of title, until the last payment became due, and then tendered it on condition that the certificate be furnished him. Plaintiff declined to comply with his demand, and, defendant still refusing to pay the last installment unless the certificate was given him, plaintiff brought suit in replevin to recover the car. Defendant answered with a general denial and then counterclaimed, setting up his purchase of the car from the Gibbs Motor Company, the assignment of the contract of sale to plaintiff, his payment of all installments up to the last one, his demand for the certificate of title, and the seizure and sale of the car by plaintiff, alleging that by such seizure plaintiff had breached the contract of sale, and praying judgment for the value of the car and its use. The case was tried to the court without a jury, and judgment was rendered in favor of defendant for $783.10, being the amount paid by him on the car; whereupon plaintiff brought the matter before us for review.

Appellants' abstract of record filed herein fails to comply with the rules of this court in that it is not indexed at all, so that it is difficult for us to determine the exact state of the record; but, since the case involves a question of law of some general interest, we have considered it as best we may, instead of dismissing the appeal.

There are some six assignments of error which raise three questions of procedure and one on the merits. We consider the latter first. It is whether or not defendant was justified in refusing to make the final payment on the automobile in question until he received a certificate of title therefor. The "certificate of title" referred to, judging from the evidence and the argument of counsel, presumably means the certificate issued by the state highway department of Arizona for the purpose of establishing ownership of an automobile. Its general effect, when properly issued and indorsed, is to establish a *prima facie* title to the automobile in the person named in the certificate.

Under the common law, a sale of personal property did not necessarily involve the giving of a written evidence of ownership, as the title of the vendor, whatever it was, ordinarily passed upon the delivery of the possession of the property to the vendee. 35 Cyc. 305. Defendant could claim no right to receive a certificate of title by reason of the common law. The conditional sales contract herein is silent as to any requirement that the vendor of the automobile in question should furnish the certificate, so that it could not be demanded as a matter of express contract. It is urged, however, that the statutes of Arizona, properly construed, require the vendor of an automobile, upon the delivery of possession to the vendee, to furnish a certificate of title to the latter, whether the transaction be a completed

sale with passage of title or a conditional sale, with title reserved.

In 1927 the legislature of Arizona adopted chapter 2, Fourth Special Session of 1927, commonly known as the highway code. This, on its face and by its title, was intended to provide a complete code regarding the public highways of the state, and regulating the use of automobiles thereon. In said chapter certain regulations were made concerning the use and sale of automobiles within the state of Arizona. These regulations, so far as material to the present case, read as follows:

"Section 8. Every owner of a motor vehicle, trailer or semi-trailer intended to be operated upon any highway in this State shall, before the same is so operated, apply to the office of the vehicle division located in the county within the State of Arizona of which the owner of said motor vehicle shall be a resident, for and obtain the registration thereof. This section shall not apply to farm tractors, road rollers, and road machinery temporarily operated or moved upon the highway or to an owner permitted to operate a vehicle under the special provisions relating to lien holders, manufacturers, dealers and nonresident.

"Section 9. . . . When a vehicle, for which registration is applied, is a specially constructed, reconstructed, or foreign vehicle, such fact shall be stated in the application. The owner of every foreign vehicle which has been registered theretofore outside of this State shall exhibit to the vehicle division the certificate of title and registration card or other evidence, of such former registration or such other evidence as will satisfy the vehicle division that the applicant is the lawful owner or possessor of the vehicle. . . .

"Section 11. (a) The vehicle division upon registering a vehicle, and upon the payment of the annual license fee and the title registration fees, herein provided for, and the payment of the personal property tax therein for the current year (unless such personal property tax is secured by real estate assessed to the

owner within such county) shall issue to the owner a registration card and a certificate of title. . . .

"Section 17. In the event of the sale or other transfer in this State of the ownership of a motor vehicle for which a certificate of title has been issued as aforesaid, the holder of such certificate shall endorse on the back of the same an assignment thereof with warranty of title in form printed thereon, and deliver the same to the purchaser or transferee, at the time of the delivery to him of such motor vehicle. The purchaser or transferee shall within ten days thereafter present such certificate assigned as aforesaid, to the vehicle superintendent accompanied by the fee provided in Chapter IV of this act, whereupon a new certificate of title shall be issued to the assignee. The person owning such motor vehicle may upon furnishing satisfactory proof to the vehicle superintendent of such ownership procure a title to said motor vehicle regardless of whether a certificate of title has ever been issued. . . .

"Section 18. In the case of dealers in motor vehicles motor cycles including manufacturers who sell to others than dealers, all of whom are intended to be covered by this and all other provisions of this section, a separate certificate of title, either of such dealer's immediate vendor or of the dealer himself, shall be required in the case of each motor vehicle in his possession. And the vehicle superintendent shall determine the form in which application for such certificate of title and assignments thereof shall be made; provided, however, that no such certificate shall be required in the case of a new motor vehicle sold by manufacturers to dealers as the term dealer is defined in this act. . . .

"Section 20. It shall be unlawful for any person to carry on or conduct in this State the business of buying, selling or dealing in used vehicles, unless and until he shall have received a license from the vehicle superintendent authorizing the carrying on or conducting of such business. . . . He shall also have in his possession a duly assigned Certificate of Title from the owner of said motor vehicle from the time when the motor vehicle is delivered to him until

it has been disposed of by him. Any person guilty of violating any of the provisions of this section shall be deemed guilty of a felony." Laws 1927, 4th Sp. Sess., chap. 2, subchap. 3.

It will be seen upon an examination and comparison of these sections that, if they are complied with, (a) the vendor of the car carrying an Arizona certificate of title must deliver such certificate, duly indorsed, to the vendee at the time he delivers possession of the car; (b) a dealer in used cars must take a duly assigned certificate of title from his vendor, and retain it until he has disposed of the car; (c) when no certificate of title has theretofore been issued, the owner may make proof of his right thereto by any means satisfactory to the vehicle superintendent; (d) no car may be operated on the highways until a license and certificate of title have been issued, with the exception of, (e) certain dealers, manufacturers, lienholders, and nonresidents under special provisions of the law not applicable to this case. Taking all of these various provisions together and the very evident purpose of this portion of the statute to insure that any person selling a motor vehicle shall be able to and shall prove and guarantee ownership, we are of the opinion that it is unlawful for any person engaged in the business of purchasing or selling used automobiles to purchase any such vehicle without at the same time securing a duly assigned Arizona certificate of title from the owner thereof, and that, when he has secured such certificate, he is equally bound upon the sale of the vehicle to transfer the certificate to the purchaser at the time of delivery of the vehicle to the latter. We think this is true whether the sale be one which passes the title outright or whether it be a conditional sale, since for the purpose of this statute the transaction is treated somewhat as a chattel mortgage, with a power of sale

in the mortgage. *O. S. Stapley Co.* v. *Rogers,* 25 Ariz. 308, 216 Pac. 1072.

The spirit and purpose of the statute is undoubtedly to prevent the sale of stolen or converted automobiles. That the requirement a certificate of title be passed with every transfer will tend greatly to promote the desired result is unquestioned. Such being the case, it was the duty of the Gibbs Motor Company, at the time it sold the car to defendant and delivered possession thereof, to also deliver him a properly assigned Arizona certificate of title. Having failed to do that, it was in default on its contract, and defendant could properly refuse to make any payments until he received the certificate. Plaintiff herein, not being the seller, was not guilty of a criminal offense in refusing or failing to deliver the certificate of title, but, being the assignee of the rights of the Gibbs Motor Company under the contract, it stood in the shoes of the motor company so far as its rights to declare a forfeiture were concerned, and could not declare the contract forfeit for nonpayment without complying with the burden imposed on its assignor by statute. *Commercial Credit Co.* v. *Phoenix Hudson-Essex,* 33 Ariz. 56, 262 Pac. 1. This disposes of the question raised on the merits of the case.

The first assignment of procedural error is that defendant failed to allege he was the owner of the property replevied, and entitled to the possession thereof and demand its return, as required under the provisions of section 4349, Revised Code of 1928; and that the court should therefore have sustained an objection to the introduction of any evidence on the counterclaim. The complaint undoubtedly is based upon the statutory action of replevin set forth in chapter 93, article 7, Revised Code of 1928. The answer is a general denial and a counterclaim which,

in our opinion, sets up facts justifying the legal conclusion that defendant was entitled to the possession of the property; but it further alleges that plaintiff was no longer in possession thereof. We think these allegations are sufficient under section 4350, Revised Code of 1928, which reads as follows:

"Sec. 4350. Judgment where property not in plaintiff's possession. If, at the time of the trial the plaintiff shall not be in the possession of the property, or the same shall not be under his control, then the alternative judgment shall not be given, but only the judgment for the value of the property, the damages suffered by its seizure and costs, and the judgment shall be against the plaintiff and the sureties on his bond."

The court correctly overruled plaintiff's objection to the admission of evidence on the counterclaim.

The second assignment of procedural error is that the court erred in the admission and rejection of certain evidence on the measure of damages. Defendant offered evidence on this issue over the objection of plaintiff, tending to show the value of the automobile at the time it was taken from his possession, and not at the date of the trial. This was objected to by plaintiff and the objection overruled. Plaintiff then offered in rebuttal evidence tending to show the value of the automobile at the date of trial, which evidence was rejected by the court. In the case of *Consolidated Nat. Bank* v. *Cunningham,* 24 Ariz. 437, 210 Pac. 850, this court held specifically that, where a judgment was rendered in a statutory replevin action against either a plaintiff or defendant in possession, it must be in the alternative for the return of the property or its value, at the election of the successful party, and that in such a case the value of the property at the time of trial was the test; any loss of value during this period being in-

cluded in "the damage the defendant may have suffered for the wrongful seizure of the property" which the statute provides the court and jury shall find. Since section 4350, *supra,* which governs the judgment when the losing party is not in the possession of the property at the time of trial and the judgment for possession cannot therefore be given, also includes damages for seizure as above, we think the rule in *Consolidated Nat. Bank* v. *Cunningham, supra,* applies in such cases also, and the proper measure of damages is the value of the automobile at the time of trial and not at the time of seizure, plus damages caused by the seizure. These latter, of course, may include any depreciation in value in the automobile between the time of seizure and the date of trial. Counsel for defendant in answering this argument insists his counterclaim was not based on the statutory action, but was in conversion, and therefore the rule above referred to does not apply; but, while the record shows he did make some reference to such a theory before the trial court, the whole pleadings, the evidence offered, and the judgment—which latter was prepared by counsel for defendant—together with the briefs filed, show conclusively that the action was actually tried on the theory that it was in all respects the special statutory proceeding under chapter 93, article 7, *supra.* Parties may not in this court depart from the theory on which the case was tried in the lower court. *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; *Arizona Power Co.* v. *Racine-Sattley Co.,* 13 Ariz. 283, 114 Pac. 558.

The trial court therefore erred in a material matter in its rulings on the measure of damages. There being no evidence in the record as to the value of the automobile at the date of trial, the evidence admitted, and on which alone the court could have rendered the judgment it did, was necessarily

prejudicial. We need not consider the other assignment of error.

It is ordered that the judgment be reversed and the case remanded for a new trial in accordance with the opinion expressed herein.

McALISTER and ROSS, JJ., concur.