[Civ. No. 3305. Fourth Dist. June 21, 1944.]

CYNTHIA C. HILL, Plaintiff and Appellant, v. JAMES R. FOWBLE, JR., Defendant and Appellant; CARL L. WHITTENTON et al., Respondents.

C. Rupert Linley and Clarence Harden for Plaintiff and Appellant.

Paul Nourse for Defendant and Appellant.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

MARKS, J.—There are two appeals from a judgment in favor of plaintiff against Dorothy Boyer Fowble in the sum of $10,000, and James R. Fowble, Jr., in the sum of $5,000, and in favor of Carl L. Whittenton and Glenn Pearson, copartners, doing business under the firm name of Pearson Motor Company, which we will refer to as Pearson, as we will refer to Dorothy Boyer Fowble as Miss Boyer. At the time of the accident here involved, Dorothy Boyer was engaged to James R. Fowble, Jr., and they were married shortly thereafter.

The action grew out of a collision between an automobile being driven by Miss Boyer and one in which plaintiff was riding. No question is raised as to the negligence of Miss Boyer nor to the amount of damages awarded.

The appeal of the plaintiff is from the portion of the judgment in favor of Pearson and is precautionary. Plaintiff states that she is satisfied with the present judgment, but if the judgment against Fowble should be reversed the portion thereof in favor of Pearson should be reversed so that its liability could be determined at a second trial.

Miss Boyer was driving a 1941 Ford at the time of the accident. It was owned either by Fowble or Pearson. She was driving it with the consent of the owner so the important question argued and to be decided is which one of these two defendants was the owner of the car on December 14, 1941, the date of the accident.

In October, 1941, Fowble was the owner of the Ford and desired to trade it in on a 1942 model. He and Miss Boyer went to the place of business of Pearson and discussed a trade. Fowble had to make a business trip east and desired to take delivery of the new car at Dearborn. The agent of Pearson was not certain of being able to make such delivery nor of being able to get the necessary priority for the sale.

Before Fowble left on his trip he gave Miss Boyer authority to determine the color of the new car, its upholstery and other such details. He left the 1941 Ford with her to use during his absence. There is no argument made that she was acting as his agent in driving the car at the time of the accident. Miss Boyer carried on certain negotiations for the purchase of the new car after Fowble left.

Pearson obtained the priority for the purchase of the new car and learned that delivery could be made in Dearborn. A purchase order was prepared for the new car which was delivered to Miss Boyer with a bill of sale which was entirely in blank. The purchase order was dated November 19, 1941, and stated the price of the new car at $1,395.78, trade in value of the 1941 Ford at $1180, and that the balance was to be paid under a conditional sales contract.

Miss Boyer sent these documents with the pink slip of the 1941 Ford to Fowble who signed and returned them all to her. She delivered them all to Pearson during the latter part of November, 1941. Miss Boyer testified concerning a conver-

sation at that time with the representative of Pearson as follows: "We discussed that, and at that time it had been previously understood, and we discussed it, that I was to keep the '41 Ford until my fiancee returned with the 1942 Ford. We discussed that and it was thoroughly understood. They said it was all right with them."

The new Ford was delivered to Fowble in Dearborn on December 12, 1941. There was some communication by telephone between Miss Boyer and a representative of Pearson which she described as follows:

"A. That was not what I called him about, but during the conversation I said, 'I will be coming to San Diego'—that week end. I don't remember whether that call took place on Thursday, or when, but I knew that Saturday morning I was coming to San Diego and I told him at that time I could turn in the car if they wanted it. He told me—asked me if I still needed the car. I told him yes, that I still needed it but that I would turn it in then. He said, 'Well, when will your fiancee be home?' I said, 'Probably—I am expecting him either on Sunday or Monday, the first of the week.' He said, 'Well, that is such a short time, you might as well keep it'."

Miss Boyer drove the car from El Centro to San Diego on December 13th, and the accident happened the next day on the return trip.

The foregoing evidence is undisputed with the exception that the agent of Pearson denied giving Miss Boyer permission to use the 1941 Ford until Fowble returned from the east with the new car.

Shortly after the accident Fowble conferred with the representative of Pearson. This resulted in a new contract for the sale of the 1942 Ford and the trade in of the 1941 car. A second purchase order was executed apparently on December 17, 1941. The selling price of the new car was $1,395.78, as before, but no price was fixed on the old car. The following appears in the order: "PAYABLE Ford '41 conv. coupe to come in trade at agreeable amount." Under date of January 2, 1942, Pearson prepared a car invoice in which the trade in allowance for the 1941 Ford was fixed at $465.68. The balance of the purchase price was borrowed by Fowble on a conditional sales contract.

Counsel for Fowble argue that the evidence is insufficient to support the finding that his client was the owner of the 1941 Ford at the time of the accident because, (1) he

had made a bona fide sale of the car to Pearson, (2) the ownership certificate (pink slip) had been endorsed and delivered to Pearson, and (3) the car had been delivered to Pearson. Based on the foregoing premise counsel draws the conclusion that Pearson and not Fowble was the owner of the 1941 Ford at the time of the accident.

Fowble relies on sections 178, 180, 186 of the Vehicle Code as they existed at the time of the accident, and on subdivisions 1 and 3 of section 1763 of the Civil Code to support his contention. He argues that a bona fide sale of the 1941 Ford was made by the first contract signed in November, 1941; that the pink slip was regularly endorsed by Fowble and delivered to Pearson on November 23, 1941; that delivery was made by Miss Boyer, a third person in possession of the car, when she offered to deliver it to Pearson. (Civ. Code, § 1763.) It is argued that Miss Boyer was in possession of the car as bailee; that she attorned to Pearson before the accident by offering to deliver the car to Pearson as soon as it desired thus recognizing its title and that she held the car for the buyer which satisfied the requirements of subdivision three of section 1763 of the Civil Code and completed the delivery to Pearson. Plaintiff admits the endorsement and delivery of the pink slip in November, 1941, but disputes the completed sale under the contract of November, 1941, and argues that there was no delivery of the car prior to the accident.

Counsel for all parties seem to agree that there are three elements necessary to complete a sale of a motor vehicle to a dealer who holds it for resale: (1) A bona fide contract of sale; (2) endorsement and delivery of the pink slip, and, (3) delivery of the car. Fowble argues that as the Vehicle Code is silent on the question of when the delivery of a motor vehicle is deemed complete we must look to the provisions of the Civil Code to decide that question. Plaintiff argues that the provisions of the Vehicle Code are complete and determine the manner in which title to a motor vehicle can be transferred and being legislation on a special subject control over the general provisions of the Civil Code.

The question is an interesting one but we find it unnecessary to decide it. We will assume, without holding, that the provisions of the Civil Code defining what constitutes delivery of personal property when sold, are applicable here.

It seems clear to us, as it did to the trial court, that the contract of November, 1941, was never fully consummated by the parties. The sale of the two cars was finally made under another contract and upon entirely different terms from those set forth in the first contract. The selling price of the 1942 Ford was the same in both contracts. The trade in value of the 1941 Ford was fixed in the first contract at $1,180 and at $465.68 in the second. The balance to be paid under a conditional sales contract was $265 in the first contract, and $1,107.72 in the second. The installments to be paid under the first contract were $22.09 per month for twelve months, while they were $61.54 per month for eighteen months under the second. The sale was completed under the second contract executed after the accident and not under the first.

If Pearson was the owner of the 1941 Ford at the time of the accident and Miss Boyer was bailee, the law fixed the rights and remedies of the parties. ■ Where personal property is in the possession of a bailee and it is damaged through the negligence of the bailee the loss falls upon the owner who may recover his damages from such bailee. (*Baugh v. Rogers*, 24 Cal.2d 200 [148 P.2d 633].) ■ Thus if the contract of November, 1941, had been fully executed, Pearson was the owner of the 1941 Ford and the loss resulting from its injury in the accident would fall on Pearson with the right to recover its loss from Miss Boyer, its bailee. If that contract had not been executed, Fowble was the owner of the car on December 14, 1941, and the loss resulting from the damage to the 1941 Ford would fall on him with the right to recover that damage from Miss Boyer. By contract of the parties formally made after knowledge of all of the facts the loss was placed on Fowble.

Section 1738 of the Civil Code provides as follows:

''(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

''(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.''

■ The practical construction placed on a contract by the parties, by their conduct and actions in executing it, is often considered strong evidence of what was intended by its

provisions. (*Skousen* v. *Herz,* 135 Cal.App. 116 [26 P.2d 498].) In the instant case the conduct of the parties after the accident, in placing the damage loss to the 1941 Ford on Fowble, is at least some evidence showing an intention of the parties that title to the 1941 Ford was not to be passed by the first contract, so that Fowble and not Pearson was its owner on December 14, 1941. At least this conduct furnishes a foundation for the reasonable inference drawn by the trial court that title had not passed and that Fowble was the owner of the car at the time of the accident. Where the trial judge has drawn a reasonable inference from competent evidence, the appellate court is not permitted to draw a contrary inference in order to reverse the judgment. (*Rovengo* v. *San Jose K. of C. Hall Assn.,* 108 Cal. App. 591 [291 P. 848].) On appeal it is the duty of the reviewing court to draw such reasonable inferences from the evidence as support the judgment. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]. It follows that the finding by the trial court, to the effect that Fowble was the owner of the 1941 Ford at the time of the accident and that it was being driven by Miss Boyer with his consent, has sufficient evidentiary support and is final and conclusive here.

 Fowble urges error in a ruling made by the trial court in sustaining an objection made by counsel for Pearson to a question propounded to Miss Boyer, asking her if she was ready and willing to turn the 1941 Ford over to Pearson when she came to San Diego on December 13th. It clearly appears from Miss Boyer's testimony that she was willing to turn the car over to Pearson at any time Pearson so desired, after the 1942 Ford had been delivered to Fowble at Dearborn. Assuming, without holding, that the ruling was error, it was without prejudice as the fact of her willingness was made perfectly plain to the court.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 17, 1944.