[Civ. No. 4954.   Fourth Dist.   Mar. 1, 1956.]

PAUL C. EVERLY, Plaintiff and Appellant, v. HARRY B. CREECH et al., Respondents; GREAT AMERICAN INDEMNITY COMPANY (a Corporation), Cross-complainant and Respondent; NORMAC, INC. (a Corporation) et al., Cross-defendants and Appellants.

Mack, Bianco & King and Mack, Bianco, King & Eyherabide for Appellants.

Borton, Petrini, Conron & Brown for Respondents.

BARNARD, P. J.—This is an action to determine a question of liability under the "newly acquired automobile" provision of an insurance policy issued by Great American Indemnity Company and covering a 1949 Hudson owned by the plaintiff Everly. The policy was dated July 10, 1949, and contained the usual provision for an additional coverage which, so far as material here, reads:

"(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

Everly was employed by Normac, Inc. as a cement finisher foreman and was living at Ridgecrest. He worked in that vicinity, most of his work being at a naval base some five miles away. As a part of his work he took some of his men to the job and while on the base, where a number of jobs were in progress, he took them back and forth between the various jobs as they were needed. He had asked his employer for a pickup truck for this purpose but none was available and in lieu thereof it was agreed that he would use his own car and the employer would pay for the gasoline, oil and expense of running it. When he acquired the Hudson on July 10, he used it for about a month and then stopped using it because of the abuse it was taking from the dirty clothes of the men and from getting stuck in the sand. About the middle of August he started "really using" a 1936 Ford which had belonged to Mrs. Gilliland, a widow, with whom Everly was going.

On September 27, 1949, Harry B. Creech was injured in a collision between an automobile operated by him and this 1936 Ford, which was being operated by Everly. Creech brought an action for damages against Everly, Mrs. Gilliland and Normac, Inc., and Everly filed a verified cross-complaint alleging that this Ford was worth $350 at the time of the accident. While that action was pending Everly brought

this action for declaratory relief against the Great American Indemnity Company. The complaint alleged, among other things, that Everly had purchased and acquired this 1936 Ford within 30 days of said accident; that Great American had refused to accept coverage, under the above quoted provision of the Hudson policy, for this Ford; and that a controversy had arisen between the parties as to the interpretation of the policy and as to whether the Ford was thus covered at the time of this accident.

Great American filed an answer admitting the issuance of the policy but alleging that it covered only the Hudson. As affirmative defenses it was alleged that the insured had other insurance; that he did not notify the company within 30 days following the delivery of the Ford to him; and that he had violated the provisions of the policy by using the Ford as a work or business car. Great American also filed a cross-complaint for declaratory relief against Everly, Creech, Normac, Inc. and Standard Accident Insurance Company, alleging that at the time of the accident Everly was acting within the scope and course of his employment by Normac, Inc. and was using this Ford on behalf of Normac; that Normac was insured with Standard; and that Everly had available to him the insurance issued by Standard. The answer to this cross-complaint denied that Everly was acting in the scope of his employment, or that this insurance was available to him.

So far as material here, the court found that at the time of the accident the Great American policy covered the Hudson, with a private passenger car classification, and the policy issued by Standard to Normac, Inc. was also in force, copies of both policies being attached to the findings; that Everly acquired possession of the 1936 Ford prior to August 25, 1949, and more than 30 days before September 27, 1949; that he was "in possession with full use of and exercise of dominion over said vehicle at all times between" the date of acquiring possession and September 27; that he had the possession and use of said vehicle for a period in excess of 30 days before September 27; that he did not notify Great American of the delivery of this Ford to him within 30 days following the date of its delivery to him; that this Ford did not replace the Hudson; that Great American did not insure all automobiles owned by Everly during the period in question; that Everly did not pay any additional premium by

reason of acquisition of the ownership of the said 1936 Ford, or by reason of the delivery of it to him; that legal title to said 1936 Ford was acquired by Everly on September 24, 1949; that the 1936 Ford was used by Everly in his occupation, and used exclusively for business purposes; that the 1936 Ford was not at any time used by Everly as a substitute for the Hudson while that car was being repaired; that all the allegations of the complaint not found to be true are untrue; and that it is not true that the Great American policy also covered the Ford car. The court also found that it was unnecessary to determine the issues with respect to Everly's employment by Normac and with respect to coverage by the Standard policy, and that these issues should be tried in the other action. Judgment was entered accordingly, and Everly, Normac, Inc. and Standard Accident Insurance Company have appealed.

The appellants contend that the finding that Great American did not insure all the automobiles owned by Everly during this period, and the finding that Everly acquired "dominion" over the Ford more than 30 days before the accident are not supported by the evidence; and that the findings are insufficient to support the judgment because the court failed to find as to the date on which Everly acquired ownership of the Ford. It is argued that the real issue in this case is as to when a sale of the Ford from Mrs. Gilliland to Everly took place; that the time of delivery is not controlling; that delivery is only important when a car is delivered with the intent that the insured become the owner; that Everly did not acquire ownership of the Ford until September 24, when the pink slip was delivered to him; and that he was automatically covered by the Great American policy for a period of 30 days after September 24, regardless of notice before the accident, under the holding of this court in *Birch* v. *Harbor Ins. Co.*, 126 Cal.App.2d 714 [272 P.2d 784].

There was evidence that Mrs. Gilliland lived in a trailer at Ridgecrest. Before he acquired his Hudson, Everly had driven the Ford around Ridgecrest a time or two but had not used it for any other purpose. Prior to August 1, he had paid several repair bills on the Ford for which Mrs. Gilliland reimbursed him. Early in August Mrs. Gilliland went to Texas by train, and Everly moved into her trailer. He did some work on the car in the evenings and then began to use it. Thereafter, he had it repaired several times at a garage, paying the bills himself.

Everly testified that it was the middle of August "when I started really using the Ford" and that he used his Hudson through July and up to August "because the Ford was gone at that time"; that he did not borrow the Ford; that prior to July 10 he had used the Ford one day but could not get it into the navy base because he could not get a pass for it; that he drove the Hudson on the job from July 10 to August 10, driving it until he almost wrecked it in the sand on the base; that he had no discussion with Mrs. Gilliland before July 10 about purchasing the car from her; that after he began to use the Ford on the job he had a sticker with his name on it on the windshield, which he procured in order to get the car into the naval base; and that when Mrs. Gilliland came back from Texas she went directly to Fresno.

He further testified that he went to Fresno on September 24 in response to a telephone call from Mrs. Gilliland; that she told him she had to go to a hospital and needed $100 for that purpose; that he gave her the $100 but she refused to accept it as a loan; that she told him to take the car for the money; that "I needed a work car, anyway," and so he took the pink slip; that he had 10 days to make a transfer of title and figured on doing that the next weekend; that because the car was wrecked he never sent the pink slip in or endorsed it; that a few days after the accident he went to see the agent who had sold him the policy; and that when he told the agent he had driven the car for more than 30 days the agent said he could not help him any and "so I just dropped the matter."

Mrs. Gilliland testified that she left the Ford at her trailer house when she went to Texas; that it was all right with her if Everly drove it; that when she returned from Texas and went to Fresno she did not intend to sell it; that when Everly came to Fresno in response to her call she did not want to borrow the $100, but insisted that Everly take the car for the money; and that she then signed and dated the pink slip both as registered owner and as legal owner.

A witness, who operated a garage, testified that in May of that year Everly had some repair work done on the Ford, paid part of the bill, and told him that he intended to buy the car and it was his obligation to pay the balance. A witness who operated a service station at Ridgecrest testified that Everly started bringing in the Ford shortly after he purchased the Hudson; that when he first brought it in he said he was buying the Ford because he did not want to

abuse the Hudson on the job, that he had bought the car from his girl friend, and that he bought it for a work car and Normac had authorized service on it; that the witness had a written authorization for this service from Everly's superintendent; that Everly brought the Ford in whenever it needed servicing, about two or three times a week, from the time he first brought it in until the time of the accident; and that he came in for this service over a period of a couple of months before the accident. The agent who issued the Great American policy testified that Everly came to see him a day or two after the accident; that Everly first told him that he had planned to come to see him about this work car and put some insurance on it for quite a long time but had been busy; that Everly told him he had acquired this old work car some two or three months back from a lady he either roomed with or boarded with; that Everly told him that he had not actually made the final payment on this car until about three days before the accident; that Everly asked him if that car would not be covered under the Hudson policy; that he told Everly there would be no such coverage due to the fact that it was used as a work car and he had owned it too long; and that Everly took the pink slip out of his pocket and told him that he had made the final payment. An investigator for Great American testified that Everly told him that he had acquired the car from a widow of an old friend in Ridgecrest; that he was working for Normac, Inc., and was going to buy a car for a work car; that Normac told him they could not furnish him a pickup to use in his work and told him if he bought the car they would maintain it for him to use for his work; and that he purchased the car and started using it about two weeks after he acquired the new Hudson.

There was also evidence that the Ford car for which Everly claimed he had paid $100 was worth $350. He testified at the trial that he had not driven the Ford as much as 800 miles, but in his deposition he had stated that he had put about 800 miles on it while on the naval base, between the time he started to use the Ford in August and the date of the accident. The pink slip for this Ford car, which was introduced in evidence and is here as an exhibit, is also significant. It shows clearly that Mrs. Gilliland's release signature as registered owner was written with one pen, while her release signature as legal owner and the two release dates of "9-24-49" were written with a different pen. On its face the pink slip indicates that the two signatures were made at different times,

and that both dates were inserted when the last signature was written.

It clearly appears that Everly took complete possession of the Ford about the middle of August and for more than two months used it as a work car, exercising full control over it, and with all the appearance of ownership. The decision in the Birch case, in which transfer and delivery took place at the same time, is not controlling here. While it was there held that such a policy provision provided automatic coverage for 30 days, it would be unreasonable to interpret that provision as intended to provide coverage for months after delivery and for an additional 30 days after legal title passed, in the absence of the notice provided for. The real issue here is not as to the precise date when ownership of the Ford was acquired by Everly. The controlling issue is as to whether or not he was the owner of the Ford, within the meaning of the policy, for more than 30 days before the date of the accident.

■ An insurance policy, like any other contract, is to be construed so as to give effect to the intention of the parties. (*National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 11 Cal.2d 689 [81 P.2d 926].) Under a contract of sale the property is transferred to the buyer at the time the parties intend it to be transferred, and their intention may be disclosed by their conduct, common usage, and the circumstances of the case. (Civ. Code, § 1738.) ■ The conduct of the parties may well disclose their intention in this regard. (*Hill* v. *Fowble,* 65 Cal.App.2d 25 [149 P.2d 862].) ■ The definition of an owner found in section 66 of the Vehicle Code does not apply under all circumstances (*Dorsey* v. *Barba,* 38 Cal.2d 350 [240 P.2d 604]), and one may be considered to be an owner of a car although he has not transferred the title in the manner required by the Vehicle Code. (*Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773 [135 P.2d 569] ; *Logan* v. *Serpa,* 91 Cal.App.2d 818 [206 P.2d 70] ; *McCalla* v. *Grosse,* 42 Cal.App.2d 546 [109 P.2d 358].) ■ The word "dominion" denotes complete ownership or a right to the property. (*Gruber* v. *Pacific States Sav. & Loan Co.,* 13 Cal.2d 144 [88 P.2d 137] ; *RCA Photophone, Inc.* v. *Huffman,* 5 Cal.App.2d 401 [42 P.2d 1059].) ■ The word ownership has different shades of meaning, depending on the context in which it appears and the circumstances in which it is used. (*Pacific Coast etc. Bank* v. *Roberts,* 16 Cal.2d 800

[108 P.2d 439]; *Gates* v. *Levers,* 108 Cal.App.2d 131 [238 P.2d 143].)

Under the circumstances here appearing, a finding of full use and the exercise of dominion over this car is equivalent to a finding of ownership within the meaning of this provision of the policy. We think these findings were sufficient to support the judgment. The court found that Everly acquired possession of the Ford prior to August 25 and that he had possession with full use of it and exercised dominion over it at all times thereafter up to the date of the collision. It was also found that it was not true that he had purchased and acquired this car within 30 days of the accident. A clear intent appears from the findings as a whole to find all the material facts against the plaintiff, and the findings are sufficient for that purpose. (*Johndrow* v. *Thomas,* 31 Cal.2d 202 [187 P.2d 681].)

The evidence supports these findings, and supports the conclusion that Everly became the equitable owner of this Ford not later than the middle of August, and that the pink slip was delivered on September 24 to complete a previous sale and to enable legal title to be passed. Assuming that mere possession for a considerable period would not be sufficient to indicate ownership in the case of the genuine borrowing of an automobile, there should be convincing evidence in such a case as this that such was the intention of the parties. To hold otherwise would open the door to unlimited opportunites for fraud. There was no such convincing evidence here, and the evidence was sufficient to show at least a qualified ownership, within the meaning of the policy, calling for a notice within 30 days after delivery. Everly testified that he was not borrowing the car when he thus used it. He used it as a work car in his business for more than two months before the accident, kept it in repair at his own expense, and told several people that he was buying it. He used the service station facilities which his employer had provided for his use in connection with his own car. He told the insurance agent who sold him the policy that he had driven the car for more than 30 days, that he had acquired the car for the purpose of using it as a work car, that he had not actually made the final settlement on the car until about three days before the accident, and that he had just paid for the car and received the pink slip. The evidence of complete possession and use of the car for a long period, of its value, of the condition of the pink slip,

together with Everly's admissions and statements, furnish sufficient evidence that ownership of the car had passed to Everly, within the meaning of the policy, long before the pink slip was signed. The question was one of fact for the court and when all of the circumstances are considered it cannot be held that the court's findings and conclusions, to the effect that the plaintiff had not sustained the burden of proving that this Ford car was covered by the newly acquired automobile provision of the policy, are not sustained by the evidence.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 25, 1956.