Thomas Fred **WALLACE** and Norma May Wallace, husband and wife, Appellants,

v.

**EMPLOYERS CASUALTY COMPANY,** Appellee.

No. 22591.

United States Court of Appeals Ninth Circuit.

Nov. 18, 1969.

Harold Goldman (argued), Phoenix, Ariz., for appellants.

Ralph E. Hunsaker (argued), of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE, District Judge.*

PENCE, District Judge:

Thomas Wallace and Norma Wallace, plaintiffs below, appeal from a judgment granting the defendant's motion for summary judgment. The parties agree as to the facts of this case, so the propriety of proceeding by way of summary judgment is therefore not at issue.

The facts are as follows: Olson Motors, of Williams, Arizona, sold a new car to a Jack Dent, and took in trade a 1957 Chevrolet. No question arises as to the validity of this transaction. On July 30, 1964, Olson Motors sold the 1957 Chevrolet to a Douglas Ezell, manager of the Potts Motor Company, of Phoenix, Arizona, and received $650 in full payment. Four days later, on August 3, 1964 Kenneth Lewis, an employee of Ezell, picked up the car at Olson Motors in order to drive it to Potts Motor. Later on in the day, that car, while being driven by Lewis in the scope of his employment and on his way to Phoenix, collided with a car in which the Wallaces were driver and passenger. As of the day of the accident the certificate of registration and title to the Chevrolet had not been signed over to Ezell by Olson Motors, as required by A.R.S. § 28–314, subsec. A.[1]

The Wallaces brought suit in the Maricopa County, Arizona, Superior Court against Lewis, Ezell, and Potts Motor Company. Olson Motors was not named as a defendant, although its liability insurer, Employers Casualty Company, was notified by plaintiffs' attorney that the action was being brought and that demand would be made upon Employers Casualty Company for payment of any judgment obtained against Lewis, Ezell and/or Potts Motor. On January 25, 1967, the Wallaces obtained a $50,000 judgment against the above mentioned defendants. Thereafter the Wallaces brought this suit in the United States District Court to recover from Employ-

---

* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

1. "§ 28–314. Transfer of title; reregistration

"A. When the owner of a registered vehicle transfers or assigns his title or interest thereto, the registration of the vehicle shall expire, but the number plates assigned to the vehicle shall remain thereon. Upon the transfer or assignment, the owner shall remove the registration card issued for the vehicle and endorse upon the reverse side thereof the name and address of the transferee and the date of transfer, and shall immediately forward the card to the vehicle division. The owner shall also endorse on the back of the certificate of title to the vehicle, if issued, any assignment thereof, with the warranty of title in the form printed thereon, and shall deliver the certificate to the purchaser or transferee at the time of delivery to him of the motor vehicle, except as provided in § 28–323. The purchaser or transferee, except as provided in § 28–315, within ten days after the transfer shall apply for and obtain the registration of the vehicle by presenting the certificate of title thereto to the vehicle division, accompanied by the required fee, whereupon a new certificate of title shall be issued to the purchaser or transferee."

ers Casualty the unpaid balance of the state court judgment.[2]

Both at the time of sale and accident, Olson Motors was insured by Employers Casualty under an automobile dealer or garage liability policy. As required by Arizona law, A.R.S. § 28–1170, subsec. B, par. 2,[3] that policy contains an "omnibus clause", which states that the policy insures the named insured and all persons using the motor vehicle with its express or implied authority against liability "arising out of the ownership, maintenance, or use of the motor vehicle." Plaintiffs maintain that, at the time of the accident, Olson Motors was the owner and Lewis was a permitted user within the meaning of this insurance provision. Plaintiffs admit that Olson Motors had, prior to the accident, "* * * sold [the 1957 Chevrolet] to * * * Ezell, receiving payment and delivering possession. * * *"[4] They contend however, that Olson Motors nevertheless remained the owner thereof for liability purposes because Olson Motors failed to sign over the documents of title as required by A.R.S. § 28–314.

■ The court below held, as a matter of Arizona law, that a vendor who fails to comply with § 28–314 does not remain the owner for liability purposes; accordingly, the vendor's insurer was held not to be liable for injuries to third persons caused by the negligent operation of the vehicle by an agent of the vendee, and the court granted defendant's motion for summary judgment. We agree.

On its face, § 28–314 does not purport to determine ownership, for liability purposes or otherwise; the statute deals with the much narrower topic of transfers of title, and the Arizona courts have consistently held that *ownership* of a vehicle in no wise depends upon prior compliance with the transfer of title provisions of A.R.S. § 28–314.[5] In *Price* (see n. 5), the contention that Arizona automobile transactions in which there was failure to comply with § 28–314 were void was explicitly rejected. The Arizona Supreme Court said:

"Appellant also argues that ownership of an automobile can be transferred only by compliance with the statutes of the State of Arizona, and can be established only through the documentary evidence prescribed thereby. He construes Pacific Finance Company v. Gherna * * * [36 Ariz. 509, 287 P. 304] to mean that a certificate of title must be transferred and assigned, to effect a valid sale, and that therefore the sales of the automobiles in the instant case were 'void ab initio.'

"The trial court found that it was the custom for automobile dealers in Phoenix to handle the paper work and forward title certificates to the Motor Vehicle Division for transfer. If appellant's argument is correct, then nearly all of the sales of cars in Phoenix are 'void ab initio.' We do not so construe Gherna, supra, in which we said:

" '[I]t was the duty of the [seller] at the time it sold the car

2. Plaintiffs had collected $10,000 through Ezell's dealer's bond with the State.

3. "§ 28–1170. 'Motor vehicle liability policy' defined
"A. * * * * *
"B. The owner's policy of liability insurance must comply with the following requirements:
"1. * * * * *
"2. It shall insure the person named therein and any other person, as insured, using the motor vehicle * * * with the express or implied permission of the named insured, against loss from

the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle * * * within the United States * * *."

4. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, Tr. p. 3.

5. Price v. Universal C.I.T. Credit Corp., 1967, 102 Ariz. 227, 427 P.2d 919; Patterson Motors, Inc. v. Cortez, 1965, 2 Ariz.App. 298, 408 P.2d 231; Stephens-Franklin Motors, Inc. v. Lambros, 1951, 71 Ariz. 389, 228 P.2d 267.

\* \* \* to also deliver him a properly assigned Arizona certificate of title. Having failed to do that, it was in default on its contract \* \* \*.'

This is certainly not language describing a contract that is void ab initio— on the contrary, the language indicates that the contract is valid and that the seller owes a duty to deliver the title certificate to the buyer.

"Appellant's argument is even more clearly refuted by Associates Discount Corp. v. Hardesty, 74 App.D.C. 44, 122 F.2d 18, decided by the United States Court of Appeals for the District of Columbia, where the statute is similar to ours. In that case the court said:

" 'The only sanction in the District of Columbia laws \* \* \* is that the purchaser cannot use the automobile on the highways \* \* \*. The statute provides only that the "owner" shall first obtain a certificate. But it nowhere provides that he is any less the owner because he fails to do so.' " 427 P.2d at 924.

Plaintiffs' contention, however, is that even if § 28–314 has been construed as but regulating transfers of titles, nevertheless a failure to comply with its provisions by the owner-transferor of a motor vehicle should subject the transferor to civil liability for the operation of the vehicle thereafter by another. Plaintiffs predicate this theory upon the fact that it is so held in California. The analogous California statute, California Vehicle Code, § 5602, however, specifically states that until the owner-transferor "has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code", and has either delivered or mailed to the motor vehicle department either the notice of transfer or appropriate documents for registration of the vehicle pursuant to the sale or transfer, he shall "be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another."

The Arizona statute, however, does not indicate any penalty, much less the severe one proposed by the plaintiffs, for noncompliance with its provisions. In this respect it differs markedly from like statutes in several other states as well as California, which declare that non-complying transactions are ineffective to transfer ownership.[6] As was said in Patterson Motors, Inc. v. Cortez, 2 Ariz.App. 298, 408 P.2d 231 at 233: "It is significant that the Arizona reregistration statute does not impose any penalty for noncompliance."

Plaintiffs concede the validity in Arizona of the above rule as between the parties to the transaction but insist that when the rights of parties injured by the operation of a motor vehicle intervene and the point at issue is the scope of transferor's insurance coverage, Arizona's "liberal construction" policy should prevail.[7]

This court has had numerous opportunities to pass upon the application which should be given to this "omnibus clause" of automobile liability contracts under the Arizona Financial Responsibility Act,[8] and recognizes that in Sandoval, supra, n. 7, the Arizona Supreme Court made it clear that all automobile liability contracts were to be read in conformity with A.R.S. § 28–1170 and that it is applicable to all such policies.

In each of the above Arizona decisions, as well as our Ninth Circuit opinions, the question of ownership of the vehicle was not in issue. In each case the insur-

6. California Vehicle Code, § 5600; Kansas, K.S.A. § 8–135(c) (6); Missouri, V.A. M.S. § 301.210; New Jersey R.S. 39:10–4 and 39:10–22, N.J.S.A.; Ohio, Rev. Code 4505.04; South Carolina Code 1952, § 46.139.52.

7. Sandoval v. Chenoweth, 1967, 102 Ariz. 241, 428 P.2d 98.

8. Farmers Insurance Exchange v. Rose, 9 Cir., 1969, 411 F.2d 270; State Farm Mutual Automobile Ins. Co. v. Thompson, 9 Cir., 1967, 372 F.2d 256; Weekes v. Atlantic National Insurance Co., 9 Cir., 1966, 370 F.2d 264.

ance carrier attempted to avoid liability because the owner of the vehicle had violated some provision of the policy or a person authorized to drive the vehicle by the owner was excluded from coverage by some provision thereof. As the Arizona court said in *Sandoval*, "the holding of Jenkins v. Mayflower Ins. Exchange [93 Ariz. 287, 380 P.2d 145] that a restrictive endorsement negating coverage could not be relied on by the insurer where it conflicted with the coverage required by the omnibus clause [is] read into *every* (italicized in original) automobile liability policy by the Financial Responsibility Act", and continued: "The result [of Jenkins v. Mayflower] is just and equitable, as it alleviates to a large degree the suffering and injustice rendered an innocent injured party by the assertion of an insurer's defense based on a *technicality* (emphasis added) over which he had no control." 428 P.2d at 100–101.

Plaintiffs insist that this court, in order to implement the expressed policy of *Sandoval*, should now engraft the rule of Harbor Insurance Company v. Paulson, 135 Cal.App.2d 22, 286 P.2d 870 (1955), into Arizona law. The facts involved there are almost on all fours with those here. J. W. Alen and Alen Motors Co. held a policy of public liability insurance issued by the Harbor Insurance Company. Alen sold and delivered the automobile to one Fronce. At no time did any of the parties to the sale complete the formalities required for the transfer of ownership by the Vehicle Code, § 5602, *supra*. Fronce, while driving the automobile, struck the defendant, a pedestrian, injuring him. Fronce sought to enforce against Alen the California statutory liability provided by § 402 of the California Vehicle Code (car being driven with permission of owner). The court held that while the rule seems to be different in other states, the result of the failure of a vendor in California to meet the requirements of the Vehicle Code is that, while as between him and his vendee, the latter becomes the owner of the vehicle, nevertheless as to third

parties who are injured by the vehicle still registered to him as owner, the vendor remains the owner and the vendee is using the vehicle with his permission. The court then acknowledged that this "may seem an artificial rule, and is contrary to that of most states." 286 P.2d at 874. As indicated above, California by statute has expressly stated that until an owner-vendor has complied with the statutory transfer requirements, he remains subject to civil liability arising from the operation of the automobile by another. The Arizona statute, § 28–314, however, imposes no penalties or liability whatsoever for failure to fill out the transfer certificate. In contradistinction to the California statute, § 28–314 is not an "insurance" or "liability" statute and has no relation thereto.

■ Ownership as well as physical possession is an applicable legal criterion under Arizona law. In Yahnke v. State Farm Fire and Casualty Co., 1966, 4 Ariz.App. 287, 419 P.2d 548, the Arizona Court of Appeals passed upon the interpretation which should be given to the term "newly acquired automobile", under the standard policy, where the plaintiff was involved in an automobile accident and the car he was driving was one which had been owned by his father but had broken down and had been at a garage where plaintiff worked for some six months while he repaired it. There had been no intention, however, on the part of the father to transfer title until in June 1962, a few days before the accident, when the father decided he would give the Jeep to the son and signed over the certificate of title. The court said:

"The policy provision clearly contemplates a situation where physical delivery is the final act in the transfer of ownership. Where such is not the case, ownership, rather than physical delivery, is the crucial concept. * * * The property was transferred from father to plaintiff when the parties intended it to be so trans-

ferred, 'and their intentions may be disclosed by their conduct, common usage, and the circumstances of the case.' Everly v. Creech, 139 Cal.App. 2d 651, 294 P.2d 109 (1956). As was stated in this case, * * * a right to the property * * * [and] a finding of full use and the exercise of dominion over this car is equivalent to a finding of ownership within the meaning of this provision of the policy.' Everly v. Creech, supra." 419 P.2d at 550.

Applying the preceding law to the instant facts, we find that under the applicable Arizona law, ownership for all purposes passed upon sale to Ezell and subsequent delivery of the Chevrolet to his agent. From that moment on, Olson Motors was not the owner of the car; it had no interest therein; it had no dominion whatsoever over it, nor any control over who was driving it, or where. It was not being driven with either the express or implied authority of Olson Motors, because with the transfer of ownership all authority over the vehicle and its operation ceased and Olson had no further rights in, to or over the subsequent use and operation thereof. The insurance coverage here given to Olson was predicated upon just such dominion, authority and rights with their concomitant obligations.

This court is always disposed to implement the Arizona Supreme Court's very broad construction of the Arizona Financial Responsibility Act, but our review of Arizona statutory and case law leads us to conclude that appellants' contention that a vendor who fails to comply with the provisions of § 28–314 remains the owner for purposes of liability finds no support in the language of that statute, in the construction placed upon that statute by the Arizona courts, or in the Arizona Financial Responsibility Act.

While we can here sympathize with the Wallaces, their plight is simply that the parties who are liable to them had less insurance than the parties who, un-der Arizona law, are not. This is not an unusual situation nor is it one that constrains this court to change the Arizona law.

Affirmed.