419 P.2d 548

**Gary R. YAHNKE and Betty Yahnke, his wife, Appellants,**

**v.**

**STATE FARM FIRE AND CASUALTY CO., a corporation, Appellee.**

**No. I CA–CIV 192.**

Court of Appeals of Arizona.

Oct. 27, 1966.

Rehearing Denied Nov. 23, 1966.

Review Denied Dec. 13, 1966.

James P. Cunningham, Phoenix, for appellants.

Scoville & Hofmann, by Leroy W. Hofmann, Phoenix, for appellee.

CAMERON, Judge.

This is an appeal from a declaratory judgment which found that plaintiff was not covered under the "newly acquired automobile" clause of defendant insurance

company's policy of insurance issued to plaintiff.

Plaintiff was previously covered in regard to his first automobile, and we are called upon to determine when, under provisions of defendant insurance company's policy, he "acquired ownership" of the second automobile, a 1946 Willys Jeep.

Plaintiff's father, Melvin Yahnke, acquired the Willys Jeep from the Ganado Mission in the early part of 1961. The vehicle was in need of extensive repairs at the time. In the summer of 1961, the plaintiff took physical possession of the vehicle, with the intention of repairing it. He drove it part way from Flagstaff to Phoenix and pulled it the remainder of the way when it broke down. For about a year it was kept in Colton's Jeep Garage while plaintiff and Earl Colton worked on the jeep, repairing and restoring it.

In February of 1962, plaintiff insured his personal car, a 1960 Volkswagen, with defendant. This was some six months after he had taken the jeep into physical possession.

In May of 1962, plaintiff's father, Melvin Yahnke, obtained the certificate of title from Ganado Mission. The title was signed, and the signature of the agent of the Board of National Missions of the Presbyterian Church was acknowledged by a notary public on 18 May 1962. The name of the purchaser was left blank. In late May of 1962, in conversation with the insurance agent, plaintiff "mentioned that he had acquired a vehicle, a jeep, and as soon as he had it running he was going to title." Plaintiff asked the agent if he would write the insurance on it. Nothing further was done, however.

The testimony of plaintiff's father indicates that the certificate was given to plaintiff a few days before the accident and the plaintiff then filled in his name, and on 11 June 1962, made application to the State of Arizona for title.

On 14 June 1962, the accident occurred and plaintiff promptly notified the defendant insurance company. Defendant's agent called on plaintiff, and plaintiff signed a statement that he was the owner of the jeep and had purchased it "approximately a year ago from the Ganado Mission." Plaintiff testified at the trial that this statement was false and that he had so notified the agent a few days after he made the statement. The testimony does not indicate that the defendant insurance company was prejudiced by plaintiff's inaccurate statements. The insurer also undertook preliminary steps to settle an accident claim brought by a third party. To facilitate such action the plaintiff signed an "authorization for claim service and non-waiver of rights." Plaintiff then made a claim on the basis that the jeep was covered as a "newly acquired automobile" under his policy on the Volkswagen. The policy in question states in Definitions, Part I:

"Newly Acquired Automobile:—means an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (2) the named insured or such spouse notifies the company within 30 days following such delivery date of his election to make this and no other policy issued by the company applicable to such automobile. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

On 14 August 1962, by letter, the company disclaimed coverage and returned a copy of a summons and complaint served in a suit brought against plaintiff. The letter stated that the basis of such denial of liability was the company's investigation which indicated Yahnke had been owner for approximately one year prior to the date of loss.

At the trial, Melvin Yahnke testified that his son was repairing the jeep for him and

that he (Melvin Yahnke) retained full ownership of the vehicle until June, 1962, when he decided to give it to his son. There is evidence that he paid the bills for parts used in the jeep's repair. The jeep had been stored at the garage where the plaintiff worked restoring the said jeep. The jeep was not operable until a few days before the accident.

Melvin Yahnke testified that he intended to use the jeep "over at some apartments I had anticipated my son managing for me, he and his wife." Melvin Yahnke kept the apartments for about eight months, but plaintiff did not manage the apartments because, as Melvin Yahnke testified:

"When my wife and Gary's wife thought of the two pools there, their having a small Grandson, they thought it would be poor business to have that done."

Melvin Yahnke's wife objected to the idea of the jeep being kept in their carport in Sun City, Arizona. He testified that a few days before he turned the title over to plaintiff, his wife had suggested, "Why don't you give the title of the thing or give Gary the jeep." Melvin Yahnke also testified that once the jeep was operable, he and his son planned to use the jeep for hunting and camping.

Reduced to its essence, the question before this Court is whether the 30 day grace period during which the plaintiff was required to notify the company of his new acquisition began to run when he physically acquired the jeep or when title passed to him, or at some point in the interim.

■ In reviewing this matter, we must keep in mind that the task of weighing evidence is for the trier of fact; this Court will not disturb the trier's judgment as long as it is reasonably supported by the evidence. Phelan v. Hightower, 89 Ariz. 242, 360 P.2d 817 (1961), Smith v. Smith, 89 Ariz. 84, 358 P.2d 183 (1960), Sampson v. Transport Indem. Co., 1 Ariz. App. 529, 405 P.2d 467 (1965).

Examination of the provision of the insurance policy in question indicates that there are three requirements that must be satisfied before a vehicle may be considered a "newly acquired automobile" under the policy:

1. *Ownership* must be acquired by insured.
2. It must replace an automobile owned by the insured or the company must insure all of his automobiles.
3. The company must be notified within 30 days following *delivery date*.

■ The defendant insurance company argues that, in the instant case, delivery date contemplates the date of physical possession and not transfer of title. Giving the provision its plain meaning, and construing the insurance contract most strongly against the maker we cannot agree. Droz v. Paul Revere Life Insurance Company, 1 Ariz.App. 581, 405 P.2d 833 (1965), Paulin v. Fireman's Fund Insurance Company, 1 Ariz.App. 408, 403 P.2d 555 (1965).

■ The policy provision clearly contemplates a situation where physical delivery is the final act in the transfer of ownership. Where such is not the case, ownership, rather than physical delivery, is the crucial concept. The 30 day period began to run when plaintiff became the owner of the jeep. The property was transferred from father to plaintiff when the parties intended it to be so transferred, "and their intentions may be disclosed by their conduct, common usage, and the circumstances of the case." Everly v. Creech, 139 Cal.App.2d 651, 294 P. 2d 109 (1956). As was stated in this case, "the word 'dominion' denotes complete ownership or a right to the property * * * (and) a finding of full use and the exercise of dominion over this car is equivalent to a finding of ownership within the meaning of this provision of the policy." Everly v. Creech, supra.

■ The evidence in this case indicates that the elder Yahnke continued to pay for the repair parts throughout the vehicle's renovation. This indicates a retention of proprietary interest. During this period

which ended a few days before the accident, it was the object of a repair effort and not in actual use as a motor vehicle. By contrast the vehicle under consideration in Everly was continually used as transportation by the plaintiff. Although the date of title transfer does not conclusively establish the date of sale, we are not willing to say from the facts in this case, as did the court in Everly, that "the pink slip was delivered * * * to complete a previous sale and to enable legal title to be passed." Everly, supra, 114.

We find that the record below does not support a finding that the plaintiff acquired ownership of the vehicle more than 30 days before the accident. For that reason, the matter is reversed and remanded to the trial court with directions to enter judgment for the plaintiff not inconsistent with this opinion.

STEVENS, C. J., and DONOFRIO, J., concur.