357 So.2d 308 (1978)
CANAL INSURANCE COMPANY
v.
C.I.T. FINANCIAL SERVICES CORPORATION et al.
No. 50191.
Supreme Court of Mississippi.
April 5, 1978.
Rehearing Denied April 26, 1978.
*309 Shell, Buford, Bufkin, Callicutt & Perry, K. Hayes Callicutt, Jackson, for appellant.
McDavid & Edmonson, Richard M. Edmonson, King & Spencer, Robert W. King, Henley, Lotterhos, Bennett & Sulser, Floyd M. Sulser, Jr., Jackson, for appellees.
Before SMITH, P.J., and BROOM, LEE and COFER, JJ.
BROOM, Justice, for the Court:
The chief aspect of this case concerns a clause in an insurance policy providing for "automatic insurance" upon the purchase of a newly acquired motor vehicle. The case was tried in the Chancery Court of the First Judicial District of Hinds County. C.I.T. Financial Services Corporation, Jerry L. Small and Lilla Small, d/b/a S & W Trucking Company, as parties complainant (C.I.T. and Smalls herein), sued Canal Insurance Company and A.E. McDill, d/b/a McDill Insurance Company (Canal and McDill herein). Canal filed a cross bill against McDill. The lower court dismissed the cross bill against McDill and entered a decree for $11,923 against Canal and in favor of C.I.T. and the Smalls. We affirm.
Suit of the Smalls and finance company C.I.T. against insurer, Canal, and agent McDill, was for insurance coverage on a 1972 White freightliner tractor ('72 freightliner herein) damaged in a wreck on August 11, 1972. Canal filed a cross bill against McDill seeking a decree requiring McDill to make Canal whole in the event Canal was held liable to the Smalls. Although the briefs deal at length with various other facts, set forth here will be primarily those facts germane to the issue: Was Canal liable under Section IV, the "thirty-day automatic insurance clause?" Section IV of the Canal policy provides:
If the insured who is the owner of the automobile, or his spouse if a resident of the same household, acquires ownership of another automobile and so notifies the company within thirty days following the date of delivery, such insurance as is afforded by this policy applies also to such other automobile as of the date of such acquisition:
(a) If it replaces an automobile described in this policy, or
(b) If it is an additional automobile and if the company insures all automobiles owned by insured and such spouse at such delivery date. (Emphasis added)
In 1971, the Smalls and a Mrs. Weems, formed a partnership in the trucking (commodity hauling) business known as S & W Trucking Company. Initially, the business owned one trailer and two trucks which McDill insured through Canal (policy number C 16 90 88). On July 3, 1974, the Smalls purchased from Capital White Truck Company a new 1974 White freightliner and obtained insurance coverage on it that same day. In addition to the 1974 freightliner, the Smalls made arrangements to also purchase a 1972 freightliner (the vehicle at issue financed by C.I.T.) and trailmobile (trailer) from Mr. Carroll L. Berry, who was having financial difficulties. The original discussions about transfer of the '72 freightliner were between Berry and Capital White who became Berry's agent in the dealings with the Smalls. C.I.T. already had a finance lien on the vehicle Berry had left with Capital White requesting that Capital White find someone to make the back payments and assume the obligations under the notes. Whether or not McDill confirmed insurance coverage on the '72 freightliner when the Smalls bargained for it is not pertinent to the dispositive issue of whether Canal is liable under Section IV of its policy.
On July 8, 1974, Carroll Berry and Mr. Small executed a security agreement purportedly transferring the '72 freightliner and trailer to the Smalls. Mrs. Small signed the agreement on either July 8 or 11, 1974. Actual physical possession of the '72 freightliner was not taken by the Smalls until July 15, 1974, less than thirty days before it was damaged, because as of the 8th, it was yet to be repainted according to the agreed deal. Within thirty days of the Smalls' taking actual possession, the '72 freightliner was wrecked on August 11, *310 1974. The testimony revealed that on July 8, 1974, the Smalls owned a number of vehicles in their individual names: a 1975 GMC pickup, a Mustang, a Cadillac, a gas truck, and other vehicles.
Appellant contends that the chancery court erred in:
I. HOLDING THAT THE THIRTY DAY PERIOD BEGAN TO RUN ON JULY 15, 1974, INSTEAD OF HOLDING THAT IT BEGAN TO RUN ON JULY 8, 1974, THE DATE THE SMALLS ACQUIRED PAPER TITLE TO THE '72 FREIGHTLINER.
II. NOT GIVING CANAL A JUDGMENT AGAINST McDILL FOR ANY SUM FOR WHICH CANAL WAS HELD LIABLE, OR HOLDING THAT McDILL WAS TOTALLY RESPONSIBLE FOR ANY LOSS HEREIN.
The critical issues, each being related to the policy's "automatic insurance" clause set forth above are:
(1) Is the "delivery date" under the policy provision, the date of the transfer of title or the date the insured obtains physical possession, actual or constructive, of the vehicle?
(2) If, under the policy provision, the date of the transfer of title can be different from the date of delivery, when did delivery occur in the instant case?
(3) Under the policy provision, did the failure of S & W Trucking Company to notify Canal within thirty days of the date of the delivery of the vehicle, relieve Canal from liability under the policy?
(4) Was section IV(b) of the policy provision complied with?
Canal argues that the term "delivery date" as used in the automatic insurance provision means the date of the transfer of title and not the date that the insured obtains possession of the vehicle. Yahnke v. State Farm Fire and Casualty Company, 4 Ariz. App. 287, 419 P.2d 548 (1966), is relied on by Canal, who specifically refers to the following headnote in that case:
The term "delivery date" in provision of automobile insurance policy insuring any newly acquired ... contemplated the date of transfer of title and not the date that the insured obtained possession of automobile.
In Yahnke, plaintiff's father, early in 1961, acquired a Jeep which needed extensive repairs. In the summer of 1961, plaintiff took physical possession of the vehicle and carried it to a garage where he and another worked on it. In February 1962, plaintiff insured his personal car through defendant insurance company. In May 1962, plaintiff's father obtained the certificate of title from the Jeep seller, but the name of the buyer was left blank. A few days before the accident, the certificate was given to plaintiff, who inserted his name. On July 14, 1972, the Jeep was accidentally damaged and plaintiff notified defendant insurance company. Under the automatic "newly acquired automobile provision" of his policy, plaintiff sought insurance coverage for the Jeep, but on August 14, 1962, the insurance company disclaimed coverage. The insurance company maintained that the "delivery date" contemplated the date of physical delivery and not the date of the transfer of title. The Arizona court held otherwise stating:

The policy provision clearly contemplates a situation where physical delivery is the final act in the transfer of ownership. Where such is not the case, ownership, rather than physical delivery, is the crucial concept. The 30 day period began to run when plaintiff became the owner of the jeep. The property was transferred from father to plaintiff when the parties intended it to be so transferred, "and their intentions may be disclosed by their conduct, common usage, and the circumstances of the case." (Emphasis added). (4 Ariz. App. at 289, 419 P.2d at 550).
The Smalls and C.I.T. contend that the facts in the instant case are materially different from those in Yahnke v. State Farm, supra, and, for that reason, the case has no application to the issues herein. *311 They point to the italicized language in the court's opinion focusing on "physical delivery" as the final act in the transfer of ownership. As Yahnke stated, "Where such is not the case, ownership, rather than physical delivery, is the crucial concept." In Yahnke, the facts did show a contrary intention in that, although the plaintiff had physical possession of the Jeep, there was no intent that he have ownership of the Jeep until that ownership was transferred from his father to him. Therefore, it was the intent of the parties that the transfer of papers was to be a final act in transferring ownership. Conversely, in the instant case, it was clearly contemplated that physical delivery would be the final act in transferring ownership. The consideration for the freightliner (delinquent payments of Berry) was not paid by the Smalls until delivery of the vehicle to them on July 15, 1974. "Physical delivery" was the final act in transferring ownership to the Smalls and, not in conflict with Yahnke, physical delivery (not ownership) became the controlling factor.
Appellees make the cogent argument that under the plain wording of the Section IV policy provision, the delivery date rather than the date of acquisition sets in motion the thirty day notice requirement. In the policy, usage of the different phraseology, i.e., "acquires ownership" and "delivery", clearly indicates that the party preparing the insurance contract contemplated that the date of acquisition of the vehicle could in fact be different from the date of delivery of the vehicle. Appellees cite Dairyland Insurance Co. v. Crane, 344 F. Supp. 839 (S.D. 1972), where Crane, a resident of South Dakota, had a 1952 Chevrolet pickup insured under a liability policy (Dairyland's) which had an automatic insurance clause similar to the clause before us. On March 29, 1967, Crane purchased a 1950 Chevrolet sedan in Iowa but it was not until April 1, 1967, that he took possession of the automobile and drove it from Iowa to South Dakota. On May 21, 1967, Crane was involved in an accident in Nebraska.
Crane stated that he had to make modifications to the car before it became operable and that these modifications were not completed until May 15, 1967. Therefore, he argued that he had no duty to notify Dairyland until thirty days after May 15, 1967. The district court held that the date of delivery triggered the thirty day notice clause and stated:
It is the date of delivery that is important under the policy provisions and not the date on which the insured decides what purpose he will make the newly acquired automobile. (344 F. Supp. at 842).
Our holding is that appellant's reliance upon Yahnke v. State Farm Fire and Casualty Company, supra, is misplaced, and when viewed in its proper perspective, Yahnke, is more supportive of appellees' position. Upon the peculiar facts of the instant case, we hold that the date of "delivery" rather than the date of "acquisition" sets in motion the thirty-day period in which notification of purchase must be given to the insurer (Canal).
When did delivery of the truck occur? Canal maintains that delivery was complete on July 8, 1974, and that nothing else was left to be done. In effect, Canal's position is that the transfer of title from Berry to the Smalls also amounted to an absolute delivery of the truck. C.I.T. and Smalls argue that while title passed on July 8, 1974, the actual delivery did not occur under the policy provision, until July 15, 1974, when the Smalls paid the delinquent payments and picked up the truck.
Undisputed evidence shows that part of the bargain finally struck between the Smalls and Berry's representative, Capital White Truck Company, was that the truck would be repainted. Capital White, as agent of Berry, maintained possession of the truck so that it could be repainted. Our opinion is that delivery (as contemplated by the policy) was not complete until the July 15 transfer of possession. Prior to that time, the delivery was at most merely conditional. Black's Law Dictionary, 515 (Rev. 4th Ed. 1968) defines "Conditional Delivery" as:

*312 ... one which passes the thing subject to delivery from the possession of the grantor, but is not completed by possession of the grantee, or a third person as his agent, until the happening of a specified event. [In this case, the repainting of the truck.]
Had Canal so desired, it could have so worded its policy in such a manner as to make it clear and obvious that the thirty-day automatic coverage period begins when documentation of a change of title is accomplished. The policy was not so worded, and our rule is that insurance contracts are to be construed most strongly in favor of the insured.
Next, we must decide: Under the terms of the "automatic insurance clause," did the failure of the Smalls to give notice of the purchase of the truck to Canal within thirty days from its delivery, amount to a forfeiture of this policy provision? Our view is that the giving of such notice is merely a condition subsequent which must be done in order to keep coverage beyond the thirty-day period. Central National Ins. Co. v. Le Mars Mut. Ins. Co. of Iowa, 294 F. Supp. 1396 (S.D.Iowa 1968). See also, Georgia Mut. Ins. Co. v. Criterion Ins. Co., 131 Ga. 339, 206 S.E.2d 88 (1974). We reject the thesis that the giving of such notice within thirty days of the date of delivery of the vehicle is a condition precedent to liability under the policy.
Policy section IV(b) requires that all the automobiles owned by the insured policy holder be insured by the same company (Canal). Canal contends that the Smalls owned a number of vehicles in their individual names which were insured by other insurance companies, and that, therefore, the sub-section (b) policy provision was not complied with. Significant is the fact that the policy in the instant case was issued to "S & W Trucking" and not to the Smalls in their individual names. The record shows that all vehicles owned by the Smalls in the trucking company business were insured by Canal. Moreover, the business of "S & W Trucking Company" was the hauling of produce and poultry, and the other vehicles owned by the Smalls could not be utilized in such a way. Also, most of the other vehicles were private passenger cars, which are not insured in Mississippi by Canal.
Our conclusion is that the decision of the chancellor in the instant case should be affirmed. Final and absolute delivery of the '72 freightliner, under the terms of the policy provision, occurred July 15, 1974, on which date the thirty-day period began running. Therefore, the August 11 damage (within the thirty-day period) to the vehicle was covered by the policy which was already issued and binding when the vehicle was finally delivered on July 15. Accordingly, McDill is neither bound to make Canal whole nor liable to Canal [for failure to request Canal to issue an endorsement covering the '72 freightliner] as asserted in Canal's cross bill against McDill, because Canal's liability is solely on the policy issued to the Smalls, d/b/a S & W Trucking Company prior to the purchase of the '72 freightliner.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.