122 F.3d 1069
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeff AHRING and Veronica Ahring, single persons,
individually, and for and on behalf of children
Shayphane, Mandy, and Parker Ahring,
Plaintiffs-Appellees-Cross-Appellants,
and
BROWN & ROOT, INC., Medical Plan, Plaintiff-Intervenor-Appellee,
v.
TRUCK INSURANCE EXCHANGE, a foreign corporation,
Defendant-Appellant, cross-Appellee,
and
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign
corporation, Defendant-Appellant-Cross-Appellee.
 No. 95-16838, 95-17243, 95-17425.
 United States Court of Appeals, Ninth Circuit.
 Submitted** November 4, 1996.
Decided Aug. 20, 1997.
 
 Appeal from the United States District Court for the District of Arizona Roger G. Strand, District Judge, Presiding
 Before: FLETCHER, FARRIS, and HALL, Circuit Judges.
 
 
 1
 The panel majority has voted to deny appellant Truck Insurance Exchange's petition for rehearing. Judge Farris would grant the petition for rehearing. Judges Fletcher and Hall have voted to reject the suggestion for rehearing en banc and Judge Farris recommends rejection.
 
 
 2
 The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.
 
 
 3
 The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.
 
 
 4
 The panel unanimously votes to GRANT the petition for rehearing filed by the Ahrings and to GRANT the petition for rehearing filed by State Farm. The memorandum disposition filed on May 21, 1997, is hereby WITHDRAWN and the accompanying memorandum disposition is filed in its stead.
 
 
 5
 MEMORANDUM*
 
 
 6
 On March 21, 1989, a pickup truck driven by Shayphane Ahring got into a collision that was the fault of an uninsured motorist. The overriding issue in this case is whose insurance policy would cover the accident. The ownership of the pickup was thoroughly disputed. The plaintiffs (collectively, "the Ahrings") allege that it was a loaner vehicle that belongs to the maintenance garage that lent it (Jim's Garage) and/or the garage owners personally (Larry and Bob Rogers). The insurance company defendants separately allege (1) that the vehicle was bought on credit by Shayphane's grandfather Meb Sherwood ("Sherwood"), or (2) that the previous owner who left the truck at the garage still held title. Also contested was the issue of permissive use. If Shayphane did not have permission to drive the car, the insurance policies did not apply.
 
 
 7
 The garage holds a policy with defendant Truck Insurance Exchange ("TIE") and both Sherwood and Larry and Bob Rogers have policies with State Farm Mutual ("SFM").
 
 
 8
 After a complex jury trial, the jury found that: (1) the garage owned the truck; (2) Shayphane was driving with permission; and (3) SFM was liable for insurer bad faith. The district court denied the Rule 50 motions for judgment as a matter of law that were made on all of these jury findings. The district court, however, granted judgment as a matter of law to SFM, stating that SFM did not owe anything under the Rogers' policies and that they were entitled to attorneys fees.
 
 
 9
 TIE appeals from the denial of its Rule 50 motions for directed verdicts on the issues of ownership and permissive use. SFM appeals the district court's denial of its Rule 50 motion with respect to the insurer bad faith issue. SFM also appeals the district court's denial of SFM's alternative motion for a new trial to correct errors in jury instructions and the admission of evidence.
 
 
 10
 The Ahrings cross-appeal the directed verdict entered in favor of SFM on the issues of the individual insurance policies of Larry and Bob Rogers and punitive damages. The Ahrings also appeal the district court's refusal to instruct the jury on the issue of fraud. Finally, the Ahrings appeal the district court's denial of their motion for attorney's fees from SFM and the award of fees to SFM from the Ahrings.
 
 
 11
 We affirm each of the challenged district court's rulings.
 
 I. TIE's Rule 50 Motions
 
 12
 We review the district court's denial of a directed verdict de novo. Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 605 (9th Cir.1993). A directed verdict is proper when the evidence permits only one reasonable conclusion. Pierce v. Multnomah County, 76 F.3d 1032, 1037 (9th Cir.), cert. denied, 117 S.Ct. 506 (1996). The evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in that party's favor. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). If conflicting inferences may be drawn from the facts, the case must go to the jury. Pierce, 76
 
 A. Ownership
 
 13
 Under Arizona law, the owner of a motor vehicle is the "person who holds the legal title of a vehicle." Ariz.Rev.Stat. Ann. § 28-101(41). The certificate of title establishes prima facie evidence of title to an automobile for the person named in the certificate. See, e.g., Saint Paul Fire & Marine Ins. Co. v. Muniz, 504 P.2d 546, 547 (Ariz.Ct.App.1972). It is undisputed that Jim's Garage was never indicated on the certificate of title. The only names on the certificate were Conch Slade--a previous owner of the truck--and Meb Sherwood, who signed the certificate after the accident in a meeting arranged by one of SFM's agents. Evidence may be presented, however, that the person named in the certificate transferred ownership to another. Yahnke v. State Farm Fire & Cas. Co., 419 P.2d 548, 550 (Ariz.Ct.App.1966).
 
 
 14
 The Ahrings presented enough evidence to convince a reasonable factfinder that ownership had been transferred. Conch Slade's widow, Iva Slade, testified at trial. First, she testified over hearsay objection that her late husband told her that he "traded" the collision pickup to Jim's garage in exchange for parts needed to fix another of his pickup trucks. Second, she testified that she mailed a letter cancelling her insurance on that pickup on the morning of the accident or that evening. She explained that she did not send the letter cancelling insurance until that day because she is "slow about doing things." She wanted to take the insurance off of that pickup and put it on another of theirs--the one that needed the parts for which Conch traded the collision pickup--but was not in any "big hurry" because the other one was not running. This testimony was sufficient to persuade a reasonable factfinder that there was a transfer in ownership. The Ahrings were also greatly aided by the impeachment of Larry Rogers' testimony that he did not intend to purchase the automobile from Conch Slade.
 
 B. Permissive Use
 
 15
 Under Arizona law, an automobile owner's insurance policies must provide coverage to any individual using the motor vehicle with permission. Ariz.Rev.Stat. Ann. § 28-1170(B)(2). That permission may be express or implied. Id. There was no evidence that Shayphane had express permission to use the collision pickup on the day of the accident. The question is whether there was implied permission.
 
 
 16
 There is a presumption under Arizona law that a driver of an automobile is presumed to be using the automobile with the permission of the owner. See Hille v. Safeco Ins. Co., 543 P.2d 474, 475 (Ariz.Ct.App.1975). This presumption has been extended to permission granted by a first permittee to a second permittee. Id. at 476. However, this presumption vanishes whenever evidence contradicting the presumption is introduced. Universal Underwriters Ins. Co. v. State Auto and Casualty Underwriters, 493 P.2d 495, 497 (Ariz.1972).
 
 
 17
 TIE claims that Larry Rogers expressly forbade Sherwood from lending the pickup, particularly to Shayphane or his friend Randy Gilliam. On direct examination by the Ahrings, Gilliam testified that Sherwood told him and Shayphane that Larry Rogers did not want the two of them to drive the pickup. The district court noted that this was the only evidence on the issue of an express denial of permission. The implied permission presumption therefore disappeared.
 
 
 18
 Although the presumption of implied permission vanished, the Ahrings were able to proffer enough evidence to permit a reasonable factfinder to find that there was implied permission. First, the Ahrings effectively impeached Gilliam's testimony on Larry Rogers' express prohibition. The presumption had vanished, but the jury was free to disregard Gilliam's testimony. Second, it was well known in the very small town of Springerville, Arizona that Sherwood customarily allowed Shayphane to use his pickup trucks and that Larry Rogers knew or should have known this.[1] The jury was free to find implied permission by Rogers when he lent the pickup with this common practice in mind.[2]
 
 II. Insurer Bad Faith
 
 19
 An insurer is liable for bad faith when it fails to treat its insured fairly in evaluating and discharging its responsibilities. Deese v. State Farm Mutual Auto. Ins. Co., 838 P.2d 1265, 1268 (Ariz.1992) (en banc). Even when the insurer pays the full amount of the claim there still may be insurer bad faith: "The core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured.... The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very security which the insured sought to gain by buying insurance." Id. at 1269. The insurer may not "provide the promised protection with one hand while destroying the very objects of the relationship with the other." Rawlings v. Apocaca, 726 P.2d 565, 571 (Ariz.1986).
 
 
 20
 In Rawlings, the issue was "whether an insurer violates the covenant of good faith and fair dealing when, for the purpose of protecting its own interests, it acts improperly to impede its insured's recovery of the uninsured portion of the loss." Id. at 569. The Arizona Supreme Court held that, even though the insurance company paid the full limits of the policy, it committed bad faith by withholding crucial information that would have assisted the insureds in recovering damages not covered by their policy. Id. at 573. As in Rawlings, based on the evidence presented at trial, this jury could have reasonably concluded that SFM caused a delay in TIE's payment under the Jim's Garage policy by failing to disclose evidence of the true ownership of the pickup.
 
 
 21
 SFM argues that Rawlings is inapplicable. First, SFM argues, the Ahrings offered no evidence that TIE would have admitted coverage under Jim's Garage's policy even if SFM had turned over to the Ahrings the notes in its possession. The Ahrings were not required to present a TIE representative who, because of their forthcoming appeal, would testify that it would not have paid the Ahrings even with the evidence. A juror may reasonably surmise that TIE's litigation position may not have been as entrenched if SFM had not concealed pertinent evidence at the outset. We will not upset the jury's reasonable factual determination.
 
 
 22
 Second, SFM argues that unlike the insurance company in Rawlings it was not acting in its own financial interest by withholding parts of its investigation. Although the insurer's conflict of interest is not as powerful here, it is certainly present. If the evidence came out that Jim's Garage owned the truck, it would be more likely that SFM could be found liable under the Rogers policy. That the jury ultimately held, and we agreed, that there was no liability under that policy does not change the fact that a reasonable juror may find that SFM was concerned about the possibility of liability.
 
 
 23
 The jury reasonably concluded that SFM contributed to the delay in TIE's satisfaction of the Jim's Garage policy. Had TIE immediately paid the limits of that policy, the Ahrings may not have suffered the damages specified by the district court including "direct pecuniary losses, loss of credit reputation, emotional distress, humiliation, inconvenience and anxiety" as well as burdensome litigation against TIE. SFM argues that these damages are a result of the underlying accident rather than any action by SFM. Although these damages would not have occurred in the absence of a devastating accident, a reasonable juror could find that they would not have occurred if SFM's actions did not impede the Ahrings' claim against TIE.
 
 
 24
 A reasonable factfinder could conclude that the Ahrings suffered damages as a result of SFM's acting in bad faith. We therefore affirm the district court's denial of SFM's Rule 50 motion.
 
 III. SFM's Motion for a New Trial
 
 25
 In the alternative to the above Rule 50 motion, SFM made a motion for a new trial because of alleged errors made in the admission of evidence. That motion was denied by the district court. A district court's decision concerning a motion for a new trial is reviewed for an abuse of discretion. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). Evidentiary rulings are also reviewed for an abuse of discretion, and should not be reversed absent some prejudice. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1399 (9th Cir.1996). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir.1993) (internal quotation omitted).
 
 A. Iva Slade's Testimony
 
 26
 Over a hearsay objection, the district court allowed Iva Stade's testimony that her late husband Conch told her that he "traded" the collision pickup for parts. The district court admitted this hearsay under Fed. Rule Evid. 804(b)(5), the residual exception for an unavailable declarant. A statement having circumstantial guarantees of trustworthiness may be admitted under that rule if the court determines that: (A) it is evidence of a material fact; (B) it is the most probative evidence on the point, and (C) the general purposes of the rule and justice are served. Id. The contested statement satisfies all three of these requirements.
 
 
 27
 Generally, the district court must make specific findings of trustworthiness when using this hearsay exception. See Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 713 (9th Cir.1992). "If the district court fails to make such findings, we may review the record to determine if the prerequisites of the rule have been met." United States v. Bachsian, 4 F.3d 796, 798 (9th Cir.1993).
 
 
 28
 Upon our review of the record, we find that Conch Slade's statement possesses the threshold circumstantial guarantees of trustworthiness and was properly admitted. First, Conch Slade would have no reason to lie to his wife about whether he traded the pickup for parts or left it to be sold on consignment. See Id.; FTC v. Figgie Int'l, Inc., 994 F.2d 595, 608 (9th Cir.1993). Second, there was corroborating evidence for the statement. Iva and Conch Slade planned to trade the collision pickup for parts. Later, Conch Slade returned from the garage without the pickup, having received from Jim's Garage the parts and service for which he sought to trade it. Third, the meaning of the declarant's statement is clear, despite attempts to make it appear ambiguous. "Traded" means the transfer of property in exchange for other property. Leaving the pickup with the garage to sell on his behalf is not a likely interpretation of the term.
 
 B. Randy Gilliam's Testimony
 
 29
 Over a hearsay objection, the district court allowed testimony from Shayphane's friend Randy Gilliam that the late Sherwood told him that Larry Rogers lent the collision pickup to Sherwood. Because Sherwood was unavailable, the applicable hearsay exception was once again Rule 804(b)(5). This contested statement also satisfies the three requirements of that exception, but the district court did not make specific findings of trustworthiness. Therefore, we must examine the record for evidence of trustworthiness.
 
 
 30
 The same trustworthiness factors that we found with respect to Iva Slade's testimony apply here. First, Sherwood had no motivation whatsoever to lie about whether or not Jim's Garage lent him the pickup. Second, corroborating evidence supports the trustworthiness of the statement. Sherwood brought one of his trucks in for repairs and drove out with a different one. He did not pay any money before he drove off with the latter truck, nor did he receive title. This behavior is consistent with the lending of a truck described in Sherwood's statement. Third, the clear meaning of the word "lent" is not disputed. Therefore, the hearsay is properly admitted under Rule 804(b)(5).[3]
 
 C. First Interstate Bank Records
 
 31
 The court erroneously admitted records from the First Interstate Bank to prove that Sherwood was senile and suffering from Alzheimer's disease. The evidence was admitted under Fed.R.Evid. 803(6) as a record of regularly conducted business activity. This rule requires that the record be made by "a person with knowledge" of the information. No showing was made as to the foundation of the people entering the records. Furthermore, there was a second level of hearsay within the records that was only admitted to demonstrate the content of the bank's records rather than the substantive point that Sherwood was senile. Nonetheless, the Ahrings' counsel mentioned the records in closing as evidence that Sherwood was senile.
 
 
 32
 Although admission of the records likely was in error, it was harmless. The issue of Sherwood's senility was not crucial to the issue of ownership nor the delay in payment that supports the bad faith claim. In addition, there was considerable other testimonial evidence from Sherwood's relatives and acquaintances which supported the conclusion that Sherwood was senile.[4]
 
 D. Donna Sherwood's Testimony
 1. Linda Woodall Note
 
 33
 The Ahrings' counsel read into the record a statement made by Donna Sherwood the day after the accident that was written down by Linda Woodall. Woodall was the secretary of Todd Bosen, SFM's insurance agent for all the relevant actors herein. The statement, made over the telephone, was: "Larry told Milburn [Meb] that this way no one would get stuck with the $100,000 bill. He kept saying, 'You need to sign this title over and Todd would take care of the insurance.' " Donna Sherwood testified that she did not remember making the statement, although she said she was sure that she made it.
 
 
 34
 The district court allowed the reading of this hearsay statement pursuant to Fed.R.Evid. 803(5):
 
 
 35
 A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.
 
 
 36
 Id. The Woodall note was neither made nor adopted by Donna Sherwood when it was fresh in her memory. Therefore, it was error to admit the statement.
 
 
 37
 This error was harmless. There was considerable other evidence of the scheming between Larry Rogers and Todd Bosen to get Meb Sherwood to sign over the title of the pickup, including Donna Sherwood's own admissible testimony. Although none of the other testimony includes this statement by Larry Rogers about a hundred thousand dollar bill, that statement is not of such singular importance that it would require a new trial.
 
 2. Larry Rogers' Statement
 
 38
 SFM objected to Donna Sherwood's testimony relaying Larry Rogers' overheard statement to Meb Sherwood. According to Donna, Rogers said, "Meb, we have to get this taken care of right away. I've talked to Todd, and he said that we have to do this right away and say that you were going to buy the vehicle so this pickup would be covered by insurance." This statement is admissible within the hearsay exception for statements made by a co-consipirator made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E).
 
 3. Donna Sherwood's Emotions
 
 39
 Donna Sherwood testified that on the day after the accident she felt like it was wrong that Meb Sherwood should have to buy that truck. SFM claims that her feelings were irrelevant as to whether Meb agreed to buy the truck before the accident. The testimony is relevant, however, to whether Donna felt that Meb was under any coercion to sign his name to the title. Therefore, there was no error.[5]
 
 IV. The Ahrings' Cross-Appeals
 
 40
 A. Coverage Under the Rogers' Individual Policies
 
 
 41
 The Ahrings appeal from the directed verdict entered in favor of SFM that the Ahrings are not entitled to any benefits under the Rogers' individual policies. We review the granting of a directed verdict de novo. Pierce, 76 F.3d at 1037. A directed verdict is proper when the evidence permits only one reasonable conclusion. Id.
 
 
 42
 The Ahrings contend that the directed verdict was improper because Larry Rogers' personal policy applied to the car as a "newly acquired car." Under that policy, "Newly Acquired Car" is defined as follows:
 
 
 43
 Newly Acquired Car--means a car newly owned by you or your spouse if it:
 
 1. replaces your car; or
 2. is an added car and:
 
 44
 a. if it is a private passenger car, we insure all other private passenger cars, or
 
 
 45
 b. if it is other than a private passenger car, we insure all cars
 
 
 46
 owned by you and your spouse on the date of its delivery to you or your spouse;
 
 
 47
 but only if you or your spouse:
 
 
 48
 1. tell us about it within 30 days after its delivery to your or your spouse; and
 
 
 49
 2. if you or your spouse has more than one of our car policies, tell us which one is to apply; and
 
 
 50
 3. pay us any added amount due.
 
 
 51
 That policy also requires that "You are the sole owner of your car." The policy provides uninsured motorist ("UM") coverage to any other person while occupying, with permission, either "your car [or] a newly acquired car." The Ahrings argue that the Rogers had an insurable ownership interest in the collision pickup because it was partnership property. That insurable interest, they argue, was sufficient to make the collision pickup a "Newly Acquired Car" and coverage extended automatically for 30 days regardless of intent.
 
 
 52
 Under Arizona law, the "Newly Acquired Car" provision grants "automatic coverage during the notification period." Daniels v. State Farm Mutual Auto. Ins. Co., 868 P.2d 353, 354 (Ariz.Ct.App.1994) (applying an identical provision). The majority position among states is that the provision is effective even if the policyholder only has a joint ownership interest in the vehicle. See 39 A.L.R.4th 229, 239 (1986); cf. Sellers v. Allstate Ins. Co., 555 P.2d 1113, 1115 (Ariz.1976) (applying similar "additional automobile" coverage from the wife's policy to husband with "equitable ownership"); R.J. Robinson and Son v. Houston Fire and Cas. Co., 200 So.2d 776, 777 & n. 3 (La.Ct.App.1967) (involving facts nearly identical to this case--a car newly acquired by a partnership garage--but holding that there was not sufficient ownership because partners do not have ownership interest in partnership property under the unique Louisiana partnership law).
 
 
 53
 We nonetheless hold that there is no coverage under the Rogers' individual policies. As stated in Daniels, the "newly acquired car" provision grants "automatic coverage during the notification period." 868 P.2d at 354 (emphasis added). That is, the provision provides a coverage window for cars that the policyholder may choose to add to their insurance policy. The Ahrings also acknowledge that the Rogers had thirty days to notify SFM to insure the car. They then argue that coverage extends automatically because the collision took place within that window and the Rogers had not selected to apply a different policy.
 
 
 54
 The Ahrings fail to acknowledge that the Rogers could not select the SFM policy to apply to the collision pickup. The pickup could not be added to an individual policy because either of the Rogers must be the "sole owner" of any car selected for coverage. A "newly acquired car" provision provides temporary coverage while the policyholder decides whether to add the car to the policy. Such a provision may not apply where, as here, the car may never be added to the policy.
 
 
 55
 Reserve Ins. Co. v. Staats, 453 P.2d 239 (Ariz.Ct.App.1969) reached a similar conclusion under analogous circumstances. In that case, the policyholder crashed a car he had just bought and he tried to apply a "newly acquired automobile" provision. Id. at 241. The court noted that he "sought, bought, and paid for an operator's policy, which he knew did not include coverage for an owned automobile." Id. at 242. The court held that the provision was inapplicable because "the stated prerequisite for coverage, the insured's ownership of an automobile or automobiles insured under the policy, is not met." Id. Similarly, neither Rogers brother owned an automobile insured under his SFM policy because the pickup did not have one "sole owner." Therefore, the "newly acquired car" provision is inapplicable for both of them.[6]
 
 B. Fraud and Punitive Damages
 
 56
 In Arizona, to establish actionable fraud, the plaintiff must show a concurrence of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely upon the representation; and (9) consequent and proximate injury. Staheli v. Kauffman, 595 P.2d 172, 175 (Ariz.1979). Each element must be proven by sufficient evidence. Echols v. Beauty Built Homes, Inc., 647 P.2d 629, 631 (Ariz.1982).
 
 
 57
 The district court properly refused to instruct the jury on a claim of fraud. The Ahrings cite a long list of actions by SFM which indicate that it was acting fraudulently in its investigation of the accident under the Rogers policies. Although none of these actions are persuasive, the Ahrings most notably fail to prove any damage whatsoever from all of this alleged misconduct. The absence of this crucial element is fatal to the Ahrings' claim of fraud.
 
 
 58
 The district court was also correct to enter a directed verdict on the issue of punitive damages. An award of punitive damages for a bad faith claim requires proof that the defendant's conduct was aggravated, outrageous, malicious, or fraudulent. Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz.1986). Punitive damages may not be awarded unless the evidence reflects "something more" than the conduct making up the elements of a tort. Id. at 577. The Ahrings failed to prove this "something more."
 
 C. Attorney's Fees
 
 59
 The district court did not abuse its discretion when it denied the Ahrings' motion and granted SFM's motion for attorney's fees. The district court awarded SFM attorney's fees for the contract claim upon which it prevailed. See Ariz.Rev.Stat. Ann. § 12-341.01A ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees.") However, the district court denied the Ahrings' claim for attorney's fees and costs against SFM because, although attorney's fees are recoverable as damages in a bad faith action, Filasky v. Preferred Risk Mutual Ins. Co., 800 P.2d 20, 22 (Ariz.1987), the attorney's fees related to the bad faith portion of the trial were included as part of the bad faith damages awarded by the jury.[7] It was not an abuse of discretion for the district court to hold that the Ahrings are not entitled to any additional award for attorney's fees or costs related to their bad faith claim.
 
 
 60
 AFFIRMED.
 
 
 61
 FARRIS, Circuit Judge, dissenting in part and concurring in part:
 
 
 62
 Lawyers frequently rush to argue the law without giving adequate attention to the facts that underlie the legal argument. The consequence of misdirected attention here is an unfortunate and, in my opinion, unjust result.
 
 I. State Farm Insurer Bad Faith
 
 63
 The majority upholds the $500,000 insurer bad faith award on an illogical theory that Lewis Carroll's Mad Hatter would have been proud of: that State Farm's actions caused another insurer to delay payment to the Ahrings, and therefore that State Farm acted in bad faith.
 
 
 64
 State Farm immediately agreed to pay the insurance limits under the Sherwood policy. The Ahrings, however, used evidence of possibly illicit interaction between Todd Bosen and Larry Rogers to bring a bad faith claim against State Farm on the theory that this interaction caused Truck Insurance to delay its payment to the Ahrings under Jim's Garage's policy. The Ahrings presented no evidence that State Farm caused this delay.
 
 
 65
 The majority explicitly states that the Ahrings failed to present any evidence of causation. See ante at 7. However, it holds that the jury could reasonably have concluded that the Ahrings proved by a preponderance of the evidence (without any evidence) that but for State Farm's actions, Truck Insurance would have paid under the Jim's Garage policy. The strain of the majority's logic is made clear by its language. The opinion states that a juror could surmise that Truck Insurance's position "may not" have been as entrenched absent State Farm's actions. However, under our rules of jurisprudence, the Ahring's were required to prove that Truck Insurance would not have been as entrenched. The majority has removed the element of causation from the tort of insurer bad faith.
 
 
 66
 The majority also improperly disposes of State Farm's second argument that the bad faith award is incorrect. State Farm argues that Rawlings is inapplicable because State Farm's alleged misdeeds were not in its own financial interest. The majority reasons that even though the jury ultimately held that there was no liability under the Rogers' individual State Farm policies, the jury could have concluded otherwise, and therefore State Farm could have been acting in its own interest. The majority's premise is incorrect on our record. The jury did not hold there was no liability under the Rogers' policies--the district court dismissed this theory of liability on directed verdict. Not only does this undermine the majority's reasoning on this point, but it is also evidence that State Farm's actions did not cause any damage because Truck Insurance continued to litigate coverage after the court held that there was no liability under the Rogers' policies.
 
 
 67
 The illogic of the majority's reasoning is further made clear by its later conclusion that the district court properly declined to give a fraud instruction to the jury. The majority affirms this decision, concluding that the Ahrings failed to prove any element of damage from the alleged misconduct. However, this alleged misconduct is exactly the same alleged misconduct on which the Ahrings based their bad faith claim, and on which the majority upholds a half-million dollar award for actual damage. The majority's opinion is internally inconsistent.
 
 
 68
 That the jury misunderstood bad faith law, or was confused by the facts is evident in the verdict amount. The jury awarded the Ahrings $910,000 in damages for the delay in payment caused by State Farm's actions. The majority now affirms an award of $510,000 (reduced from the verdict amount by remittur). No reasonable juror could conclude on this record that this was the actual amount of damage the Ahring's suffered due to State Farm's causing Truck Insurance to delay payment (a punitive damage instruction was not given; damages could not have been used to punish the defendant). It is also unreasonable to conclude that State Farm acted in bad faith to avoid payment under the Rogers' individual policies when, according to the majority opinion, the only reasonable conclusion from the evidence is that there was no coverage under those policies. See ante at 14.
 
 II. Truck Insurance's Appeals
 
 69
 I also disagree with the majority on Truck Insurance's appeals.
 
 
 70
 The majority upholds the jury verdict that Jim's Garage owned the pickup on the basis of two pieces of evidence: Iva Slade's cancellation of the insurance on the truck, and Iva Slade's testimony that Conch Slade stated he had "traded" the pickup to Jim's Garage. The second item is hearsay testimony that the majority holds was properly admitted under a hearsay exception that requires "circumstantial guarantees of trustworthiness." The majority concludes that the hearsay statement contains these guarantees in part because it is unambiguous.
 
 
 71
 The Supreme Court has explained that hearsay exceptions exist because in some situations circumstantial guarantees of accuracy and trustworthiness render the need for cross-examination superfluous. Idaho v. Wright, 497 U.S. 805, 819-20 (1990). Here, cross-examination would not have been superfluous. Without cross-examination, no one will ever know what Conch Slade meant. He used the word "traded" in casual conversation, not legal discourse. It is unclear whether he used "traded" literally, to mean he sold the pickup in exchange for parts, or casually, to mean he left the pickup for Jim's Garage to sell for him and then credit his account, which already had been charged for parts. It was an abuse of discretion to admit this testimony. No reasonable jury could have found that Jim's garage owned the pickup based solely on the single item of admissable evidence.
 
 
 72
 The majority upholds the jury verdict that Larry Rogers impliedly gave permission for Shayphane to use the pickup on a single piece of evidence: that it was well known in Springerville that Sherwood allowed Shayphane to use Sherwood's pickups. However, the only evidence of this "common knowledge" presented at trial were statements by various relatives and close friends of the Ahrings. There was no evidence that people in the general Springerville community, such as Larry Rogers, knew about Sherwood's propensity for loaning his pickup to Shayphane. No reasonable jury could conclude that the Ahrings proved that Larry Rogers impliedly gave permission for Shayphane to use the pickup.
 
 
 73
 I concur in the majority's decisions concerning the Ahring's cross-appeals.
 
 
 74
 I therefore dissent in part and concur in part.
 
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Rogers' claim that Sherwood was buying the pickup for Shayphane was evidence that he was fully aware of Shayphane's frequent use of Sherwood's automobiles
 
 
 [2]
 TIE also appeals several instructions given to the jury. It claims that the instructions with respect to agency law and the elements of a conspiracy only applied to SFM and prejudicially harmed TIE by association. The lack of an instruction limiting those instructions to SFM was harmless, however, and should not be reversed. See Oglesby, 6 F.3d at 606
 
 
 [3]
 Appellants claim that there are no circumstantial guarantees of trustworthiness here because the Ahrings went to great lengths to demonstrate Sherwood's senility and untrustworthiness. There were enough guarantees of trustworthiness on this statement, however, to allow its admission. Furthermore, appellants were free to attack the statement at trial using the evidence of senility. See Mutuelles, 957 F.2d at 713 (admitting hearsay when the opposing party could cross-examine the declaration with a deposition)
 
 
 [4]
 For these same reasons, any error in admitting the testimony of Dr. Lydia Artiola on the issue of senility was also harmless
 
 
 [5]
 Another basis for the motion for a new trial is the contention that John Osborne, the Ahrings' counsel, should have been disqualified because he was a material witness to many relevant events and could "testify" during his argument. The "relevant events" in question were basically rebuffed requests for information from SFM which Osborne cited as evidence of bad faith in his closing argument. Osborne was not a necessary witness to any of these events, however, and his disqualification was not mandatory
 
 
 [6]
 Such a holding does not disturb Arizona's strong public policy on behalf of UM claimants because there was no coverage for the car at any time. See Rashid, 787 P.2d at 1069 (noting that UM benefits are not to be reduced when "[a] premium has been paid for [the coverage] and the insurance policy has been issued")
 
 
 [7]
 The damage instruction requested by the Ahrings provided for "[a]ll costs and expenses reasonably incurred by the Ahrings in their pursuit of their rights."